IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RETROFITNESS, LLC and** <br> **RETRO IP, LLC** <br><br>           **Plaintiffs,** <br> v. <br><br> **IRVING PARK HEALTH CLUB, LLC,** <br> **and CHARLES H. CUI,** <br><br>           **Defendants.** | No.    1:24-cv-7416 <br><br> Hon. _____ |

Plaintiffs, Retrofitness, LLC ("Retro LLC"), and Retro IP, LLC ("Retro IP") (collectively "Retrofitness" or "Plaintiffs"), by and through their attorneys, Marks & Klein, LLC, state as follows:

## INTRODUCTION

1. This is an action for injunctive relief stemming from multiple breaches of the contract between Retrofitness and Defendants, Irving Park Health Club, LLC ("IPHC") and Charles H. Cui, ("Defendants"), arising out of Defendants' failure to comply with contractual obligations pursuant to the franchise agreement between the parties.

2. As set forth in more detail below, the parties entered into a Retrofitness franchise agreement pursuant to which Defendants obtained the right to open and operate a Retrofitness franchise outlet located at 4901 West Irving Park Road, Chicago, Illinois 60641 (the "Outlet"). The subject Retrofitness franchise agreement dated August 15, 2013 (the "Franchise Agreement," a true and correct copy of which is attached hereto as **Exhibit A**).

3. On or around July 7, 2024, Retrofitness terminated the Franchise Agreement due to Defendants' uncurable breach of the Franchise Agreement.

4. The Franchise Agreement contains several post-termination covenants, among those, Defendants were and are obligated to cease using Retrofitness' Marks (as defined herein) (or marks confusingly similar thereto) and trade dress and cease operating their business, or a competing business, after the expiration of the franchise term.

5. However, Defendants continue to operate their health club as a RetroFitness® Outlet, despite the fact that they are no longer licensed or authorized to do so. This represents an unlawful and unlicensed use of Retrofitness' intellectual property and trade dress in a manner designed to cause consumer confusion and Defendants are trading off on Retrofitness' goodwill in the community to their own financial benefit.

6. Accordingly, Plaintiffs seek injunctive and other relief against Defendants as set forth in more detail below.

**PARTIES**

7. Plaintiff Retrofitness, LLC is a Delaware limited liability company, with a principal place of business of 1601 Belvedere Road, Suite E-500, West Palm Beach, FL 33406. Retrofitness is engaged in the business of selling and granting franchises for the operation of outlets under the trademark RETROFITNESS® that provides discount fitness programs in a specially designed format.

8. Plaintiff Retro IP, LLC ("Retro IP") is an affiliate of Retro LLC, a Delaware limited liability company formed on August 14, 2008 with a principal place of business at 43 County Road 537 West Colts Neck, New Jersey 07722, solely to be the holder of Retrofitness' intellectual property.

9. Upon information and belief, Defendant Irving Park Health Club, LLC is an Illinois limited liability corporation with a principal place of business located at 4901 W Irving Park Road, Chicago, Illinois 60641.

10. Defendant Charles H. Cui is an individual and, upon information and belief, a citizen of the state of Illinois residing at 1645 W Fullerton Ave., 3rd Floor, Chicago, Illinois 60614-1919.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 as Plaintiff's claims against defendant are based upon trademark and trade dress infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

12. This Court also has jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims arising under federal law that they form part of the same case and controversy.

13. This Court has personal jurisdiction over all Defendants because each of them resides in the State of Illinois, and because they are engaging in the wrongdoing at issue in this lawsuit in the State of Illinois, as described below.

14. Venue is proper in this judicial district as a substantial part of the events or omissions giving rise to the claims asserted in his Complaint occurred in this judicial district.

## BACKGROUND FACTS

### The Retrofitness System

15. Retrofitness engages in the business of offering and granting franchises to qualified applicants for the operation of high quality, low cost fitness facilities in a specially designed format under the trademark RETROFITNESS® throughout the United States.

16. Retrofitness is the franchisor of the RETROFITNESS® franchise system.

17. Retro IP is the owner of the trademark, service mark, and trade name RETOFITNESS® and related marks (the "Marks").

18. Retrofitness has the exclusive license to use and license others to use these Marks and the trade name. Retrofitness and its predecessors at interest have used the Marks continuously since approximately 2005 to identify RETROFITNESS® outlets, exercise/fitness training programs and related services.

19. Retro IP owns numerous federal registrations for the mark RETROFITNESS® and related marks. Among those registrations are Registration Nos. 3054371; 3222252; 3224745; 3205997; 3304486; 3630669; and 4011942.

20. Each of these registrations is in full force and effect. Registration No. 3054371 is incontestable pursuant to 15 U.S.C. § 1065.

21. The Retrofitness Marks have been very widely advertised and promoted by Retrofitness over the years. Retrofitness and its franchisees have expended millions of dollars in advertising and promoting the Retrofitness Marks.

22. RETROFITNESS® outlets feature Retrofitness' distinctive trade dress, including yellow and red color scheme, checkerboard floor, juice bar, and the Retrofitness logo (the "Retro Trade Dress").

23. As a result of the extensive sales, advertising, and promotion of the Retrofitness Marks in the various markets where Retrofitness operates throughout the United States, the fitness industry and the general public have come to know and recognize the Retrofitness Marks and the Retro Trade Dress and to associate them exclusively with products and services offered by Retrofitness and its franchises.

24. The Retrofitness Marks are assets of inestimable value to Retrofitness, representing and embodying Retrofitness' considerable goodwill and favorable reputation.

**The Parties' Rights and Obligations Under the Franchise Agreement**

25. On or about August 15, 2013, Retrofitness and Defendant Cui entered into the Franchise Agreement pursuant to which Defendants obtained the right to open and operate the Outlet.

26. Subsequently, the Franchise Agreement was assigned to Defendant IPHC.

27. Pursuant to Exhibit 5 of the Franchise Agreement, Defendant Cui personally guaranteed, jointly and severally, full payment and performance of all obligations of Franchisee to Retrofitness, including obligations arising out of the Franchise Agreement and/or any other agreement between the parties. *See* Exhibit A.

28. Defendants subsequently opened the Outlet.

29. Section 7.1.1 of the Franchise Agreement states that Defendants "shall refrain from engaging in any action (or failing to take any action) that causes or could cause damage to the Marks, the System, or the goodwill associated with the Marks."

30. Section 7.9.1 of the Franchise Agreement obligated Defendants to "comply with all federal, state, and local laws and regulations pertaining, directly or indirectly, to the RETROFITNESS® Outlet."

31. Section 7.1.4 of the Franchise Agreement obligated Defendants to "promptly notify Retrofitness in writing of any claim, demand, or suit against You or against Your principals."

32. Pursuant to Section 10.2.1 of the Franchise Agreement, Retrofitness has the right to immediately terminate the Franchise Agreement upon written notice if the Defendants "[e]ngaged in conduct reflecting materially and unfavorably upon the goodwill associated with the

Trade Name, Marks, and/or System" or if the Defendants have "[b]een convicted of a felony or other crime(s) involving moral turpitude, or any other crime or offense that Retrofitness believes is reasonably likely to have an adverse effect on the System or Marks, the goodwill associated with same, and/or Retrofitness's interest therein."

33. Pursuant to Section 10.3(c) of the Franchise Agreement, upon termination Defendants must:

> immediately and permanently cease to operate the RETROFITNESS® Outlet. [Defendants] shall immediately and permanently stop using the Marks or any confusingly similar marks, the System, or any advertising, signs, stationery, or forms that bear identifying marks or colors that might give others the impression that You are operating a RETROFITNESS® Outlet; [Defendants] shall refrain from any statement or action that might give others the impression that [Defendants] are or ever were affiliated with the RETROFITNESS® Franchise Network.

34. Pursuant to Section 10.3 (k) of the Franchise Agreement, upon termination Defendants "shall abide by the post-termination non-compete covenant in Section 8.6 of this Agreement[,]" which states that Defendants:

> may not, for two (2) years after the Termination of this Agreement, operate, own, or be employed by, be an independent contract for, or otherwise affiliated with, or have a beneficial interest in any entity that is competitive with any RETROFITNESS® Outlet and that is located: (a) at the Approved Location; or (b) within a radius of ten (10) miles of any RETROFITNESS® Outlet and/or [the Outlet].
>
> Entities that are competitive with RETROFITNESS® Outlets include without limitation: any gym, any business which offers fitness training facility services, fitness training services, health club memberships, physical training programs, any companies offering exercise, health and wellness, and fitness facilities and training and ancillary merchandise as Retrofitness may authorize from time to time to members, through the usage of fitness equipment, locker/shower facilities, spa facilities, tanning, personal training, juice bar, vitamin/supplement sales, and/or other fitness and health-related products or services similar to those offered by Retrofitness Outlets.

35. Pursuant to Section 11.7.1 of the Franchise Agreement, actions for injunctive relief are excepted from the otherwise applicable mandatory mediation provisions set forth in the Franchise Agreement.

### Defendants' Breaches of the Franchise Agreement

**A. Defendants breach the Franchise Agreement**

36. Retrofitness recently became aware that Chui had been convicted of felonies on charges of racketeering and bribery in the United States District Court for the Northern District of Illinois for charges which include racketeering and bribery.

37. This conviction is a breach of Sections 7.1.1 and 7.9.1 of the Franchise Agreement.

38. Defendants also failed to notify Retrofitness that Defendants were being sued by a lender for recovery of money owed in connection to Defendants' Outlet.

**B. Retrofitness terminates that Franchise Agreement**

39. On or around July 7, 2024, Retrofitness sent written notice to Defendants (the "Notice of Termination") that Retrofitness was exercising its right to immediately terminate the Franchise Agreement pursuant to 10.2.1.

40. The Notice of Termination demanded that, pursuant to Section 10.3, Defendants:

- Immediately assign [Defendants'] interest in the lease for the Outlet location and immediately surrender possession to Retrofitness.

- Immediately and permanently stop using the Retrofitness marks, including the RetroFitness® trademark, all other System marks, any other confusingly similar marks, and the System;

- Immediately return the Retrofitness Operations Manual and all other confidential information and property belonging to Retrofitness;

7

- Promptly take all steps necessary to: (i) delete [Defendants'] listings from classified telephone directories; and (ii) assign to Retrofitness all telephone numbers used in connection with the operation of the Outlet;

- Provide Retrofitness with the current customer list and current employee list as of the Termination Date;

- Comply with Defendants' confidentiality and non-competition covenants, including but not limited to those set forth in Sections 8.4 and 8.6 of the Franchise Agreement, and those set forth in the Nondisclosure and Noncompetition Agreement;

- Refrain from making any statement or taking any action that might give others the impression that [Defendants] are affiliated with the Retrofitness System; and,

- Maintain all records required by Retrofitness for a period of not less than three (3) years, or such longer period as required by law, after final payment of any amounts [Defendants] owe to Retro fitness.

**C.    Defendants breach their post-termination obligations under the Franchise Agreement**

41.    Despite Retrofitness' proper termination of the Franchise Agreement, Defendants continued to operate the Outlet using the Marks and the Retro Trade Dress, including, but not limited to, its exterior signage, interior signage, branded gym equipment, and other uses.

42.    To date, Defendants have failed to assign their interest in the lease for the Outlet location and immediately surrender possession to Retrofitness.

43.    To date, Defendants have failed to return the Retrofitness Operations Manual and all other confidential information and property belonging to Retrofitness.

8

44. To date, Defendants have failed to delete its listings from classified telephone directories; and assign to Retrofitness all telephone numbers used in connection with the operation of the Outlet.

45. To date, Defendants have failed to provide Retrofitness with the current customer list and current employee list as of the Termination Date

46. To date, Defendants have refused to provide Retrofitness with any information whatsoever in connection with the leased equipment, and have also refused to provide Retrofitness with an opportunity to inspect the equipment at the Outlet, in direct breach of Defendants' express, contractual obligations, thereby unreasonably and unlawfully obstructing Retrofitness' ability to make a final determination as to whether to exercise its rights to assume any outstanding leases for equipment in the Defendants' RetroFitness® Outlet pursuant to Section 10.3(g) of the Franchise Agreement.

## COUNT I
### Trademark Infringement
### (Violation of the Lanham Act, 15 U.S.C. § 1114)

47. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 48 as if set forth at length herein.

48. Defendants have continued to use the Marks at the Outlet after the termination of the Franchise Agreement without authorization from Retrofitness.

49. Defendants unauthorized use of the Marks in connection with the Outlet is likely to cause confusion, or to cause mistake, or to deceive consumers that the gym being operated at the Outlet is a Retrofitness gym.

50. The acts of Defendants were and are undertaken knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive the public into believing Defendants are authorized to use Retrofitness' Marks in connection with their business.

51. As a result of Defendants' actions, Retrofitness has and continues to suffer irreparable injury to its goodwill with consumers which is continuous and ongoing.

## COUNT II
### Unfair Competition
### (Violation of the Lanham Act, 15 U.S.C. § 1125)

52. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 51 as if set forth at length herein.

53. Defendants' use of Retrofitness trademarks and trade names in commerce, outside the scope of the Franchise Agreement, and without the consent of Retrofitness, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Retrofitness Marks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants' acts were and are undertaken knowingly and intentionally to cause confusion, or to cause mistake or deceive the public into believing Defendants' business is affiliated with, sponsored by, or otherwise associated with Retrofitness.

55. As a direct and proximate result of Defendants' actions, Retrofitness has and continues to suffer irreparable injury to its goodwill with consumers which is continuous and ongoing.

## COUNT III
### Trade Dress Infringement

56. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 55 as if set forth at length herein.

57. The Retrofitness outlets are identified by the Retro Trade Dress, which includes a yellow and red color scheme, checkerboard floor, juice bar, and the Retrofitness logo.

58. The Retro Trade Dress is inherently distinctive.

59. Defendants' use of trade dress that is identical to Retrofitness trade dress, outside the scope of the Franchise Agreement, constitutes a false designation of the origin of Defendants' Outlet, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their fitness facility with the Retrofitness System. Such adoption of Retrofitness' trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

60. Defendants' acts were and are being done knowingly and intentionally to cause confusion, to cause mistake, or to deceive, and as a direct and proximate result of Defendants' actions, Retrofitness has suffered and is continuing to suffer irreparable injury which is continuous and ongoing.

## COUNT IV
## Breach of Contract – Franchise Agreement

61. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 60 as if set forth at length herein.

62. The Franchise Agreement was and remains a valid, binding, and written expression of the parties' agreement to be bound under the express terms set forth in that document.

63. Retrofitness performed each and every obligation as required under the terms of the Franchise Agreement.

64. Defendants have failed to perform their post-termination obligations, as outlined at length elsewhere herein, but generally include an unreasonable refusal to produce and provide

necessary documentation and access rationally related to protecting both Retrofitness' interests, as well as the public's.

65. The post-termination covenants set forth in Section 10 of the Franchise Agreement were and are material conditions of the Franchise Agreement and Defendants' full performance of those express terms was a necessary covenant to enter in the now-terminated franchise relationship with Defendants.

66. As a direct and proximate result of Defendants' material breaches of the Franchise Agreement, Retrofitness has suffered and continues to suffer irreparable injury by means of its inability to accurately assess the value of the physical assets and business it must elect to purchase within the time period set forth in the Franchise Agreement.

## COUNT V
### Breach of Contract – Franchise Agreement

67. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 66 as if set forth at length herein.

68. The Franchise Agreement was and remains a valid, binding, and written expression of the parties' agreement to be bound under the express terms set forth in that document.

69. Retrofitness performed each and every obligation as required under the terms of the Franchise Agreement.

70. Defendants have failed to perform their post-termination obligations, as outlined at length elsewhere herein, but generally include continuing to use and display of Retrofitness' Marks and marks which are substantially similar to them in commerce despite a clear contractual obligation to cease doing so.

71. As a direct and proximate result of this failure to abide by the post-termination covenants in the Franchise Agreement, Retrofitness is irreparably harmed by the dilution of, and infringement against, its Marks, by means of a loss of goodwill which cannot be readily calculated.

## COUNT VI
### Breach of Contract – Franchise Agreement

72. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 71 as if set forth at length herein.

73. The Franchise Agreement was and remains a valid, binding, and written expression of the parties' agreement to be bound under the express terms set forth in that document.

74. Retrofitness performed each and every obligation as required under the terms of the Franchise Agreement.

75. Defendants have failed to perform their post-termination obligations, as outlined at length elsewhere herein, but generally include a demonstrated failure to cease operating a competing business, namely an unofficial RetroFitness® Outlet.

76. As a direct and proximate result of this failure to abide by the post-termination covenants in the Franchise Agreement, Retrofitness is irreparably harmed by the dilution of, and infringement against, its Marks, by means of a loss of goodwill which cannot be readily calculated.

## COUNT VI
### Breach of Contract – Franchise Agreement

77. Retrofitness repeats and realleges the allegations contained in Paragraphs 1 through 77 as if set forth at length herein.

78. The Franchise Agreement was and remains a valid, binding, and written expression of the parties' agreement to be bound under the express terms set forth in that document.

79. Retrofitness performed each and every obligation as required under the terms of the Franchise Agreement.

80. Defendants have failed to perform their post-termination obligations, as outlined at length elsewhere herein, but generally include making any statements or taking any actions that might give others the impression that Defendants are affiliated with the Retrofitness System.

81. As a direct and proximate result of this failure to abide by the post-termination covenants in the Franchise Agreement, Retrofitness is irreparably harmed by the dilution of, and infringement against, its Marks, by means of a loss of goodwill which cannot be readily calculated.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

a. Enter an Order directing Defendants to comply with all post-expiration obligations under the Franchise Agreement, including their obligations to immediately provide Retrofitness with all information and access necessary for Retrofitness to exercise its right to take control and ownership of the Outlet, as required under Section 10.3 of the Franchise Agreement, including but not limited to copies of all relevant leases, a list of all liens and/or encumbrances on those leases, access to inspect the premises and equipment, and an inventory and calculation of the current value of all equipment, supplies, and inventory located at the premises;

b. Enjoin Defendants by entering an Order requiring Defendants to cease the use of any and all Retrofitness Marks, or marks confusingly similar thereto, and to cease operating a competitive business in violation of the Franchise Agreement;

c. Enjoin Defendants and all those acting in concert with them from taking any actions which further infringe upon any of Retrofitness' rights, including any action or actions that may compromise the value of the assets, equipment, and/or premises;

d. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to §11.11 of the Franchise Agreement and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

e. Award Plaintiffs such other equitable relief as this Court may deem just and proper.

Dated: August 19, 2024 /s/ *Andrew P. Bleiman, Esq.*
Andrew P. Bleiman, Esq.

MARKS & KLEIN, LLC

Andrew P. Bleiman, Esq. (ARDC 6255640)
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Tel: 847.239.7238
Fax: 732.219.0625
andrew@marksklein.com

Mark I. Fishbein, Esq. (ARDC 6206919)
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Tel: 847.239.7238
Fax: 732.219.0625
mark@marksklein.com